## BROOKS v. A. A. DAVIS & CO. et al.

No. 17092—Opinion Filed Dec. 7, 1926.

Rehearing Denied March 15, 1927.

1. **Master and Servant—Workmen's Compensation Law—Contract of Insurance Carrier—Liability to Persons Accepted as Employees by Contractor.**

Where a compensation insurance contract issued to an original contractor insures against such obligations to pay compensation as may be imposed by law, and also against such obligations to pay compensation as may be accepted by such original contractor, the scope of the insurance contract is broadened to the extent of rendering the insurance carrier liable for compensation to such persons as may be accepted by such original contractor as employees, although not technically employees, where such person is injured in the course of hazardous work conducted by said original contractor.

2. **Same—Compensation to Subcontractor Accepted as Employee.**

Where an original contractor lets a subcontract to another, and induces him not to carry compensation insurance, with the understanding that such subcontractor report his pay roll to the original contractor for such original contractor to pay the insurance premiums based upon such pay roll and charge them back to the subcontractor, and thereafter such subcontractor is engaged in hazardous work of the contractor and makes his pay roll reports to the original contractor and includes himself thereon at a daily wage along with his employees doing like work for similar wages, and the original contractor accepts such pay rolls, reports the same to the insurance carrier and pays insurance premiums thereon and charges such premiums back to the subcontractor, and the premiums are accepted by the insurance carrier, the original contractor accepts the obligation to compensate such subcontractor as well as his employees for such injuries as fall within the purview of the Workmen's Compensation Law, and such acceptance by the original contractor binds the insurance carrier where the contract of insurance insures against obligations to pay compensation accepted by the original contractor.

**3. Same—Liability for Compensation to Partner Carried on Pay Roll as Employee.**

Where B. and R. are operating as partners, and B. engages as an employee of B. and R. and his name and wages are reported on the pay roll of B. and R. along with other employees of B. and R., and insurance premiums upon such pay roll are paid to the insurance carrier liable for compensation to the other employees of B. and R. and are accepted by it, and B. sustains injury falling within the purview of the Workmen's Compensation Law, such insurance carrier is liable to B. as an employee of B. and R. for the compensation fixed by the law. And such insurance carrier is not concerned about the anomalous situation existing between B. and the partnership consisting of B. and R., in which B. is one of the partners.

**4. Same—Compensation Law Not Subject to Common-Law Rules.**

The Workmen's Compensation Law is in derogation of the common law; and common-law rules canot be invoked either to enforce or defeat a claim for compensation asserted under the act.

**5. Same—Review of Awards by Industrial Commission—Lack of Evidence to Support Findings of Fact.**

The State Industrial Commission, under the Workmen's Compensation Law, is the exclusive trier of the facts where a claim for compensation is presented; and findings of fact made by the State Industrial Commission are conclusive upon the Supreme Court where the findings are supported by evidence; but where a cause is presented to the Supreme Court, and the findings of the Commission upon questions of fact are assailed, it becomes the duty of the court to determine, as a matter of law, whether there is evidence to support the finding, and where it is determined that there is no evidence to support the finding, the court will disapprove and set aside the finding.

**6. Same—Reversal with Directed Findings.**

Where the record brought up to the Supreme Court from the State Industrial Commission for review establishes certain facts necessary to determine questions arising upon a claim for compensation, without conflict in the evidence, and the Supreme Court disapproves and sets aside and reverses the order of the State Industrial Commission, the Supreme Court will direct necessary findings in accord with the undisputed and uncontradicted facts established by the record.

**7. Same.**

Record before the State Industrial Commission reviewed, and held, not to support the order appealed from; and held, that the record requires that the cause be remanded to the State Industrial Commission for further proceedings, with directions.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Original proceeding in the Supreme Court to vacate an order and judgment of the State Industrial Commission denying an award for accidental injury. Petition filed by E. H. Brooks against A. A. Davis & Company, Federal Surety Company, insurance carrier, and State Industrial Commission. Order and judgment denying award reversed, with directions.

Lawrence Mills and Thomas, Frank, Milam & Touchstone, for petitioner.

Ames, Lowe & Cochran, for respondents.

Opinion by SHACKELFORD, C. This is an original action instituted in this court by E. H. Brooks, petitioner, to review an order and judgment of the State Industrial Commission denying petitioner an award against A. A. Davis & Company, and its insurance carrier, Federal Surety Company, for accidental injury sustained by petitioner.

The facts seem to be about as follows: A. A. Davis & Company had a road construction contract with the State Highway Department to construct a certain road in Carter county, known as federal aid project No. 69-A. About August, 1924, the petitioner and A. A. Davis & Company entered into a contract, by which the petitioner, as a subcontractor, undertook to construct a certain section of the contemplated road. As a part of the arrangement it was understood that A. A. Davis & Company should carry compensation insurance to protect the employees of E. H. Brooks, the petitioner, the Federal Surety Company being its insurance carrier, the insurance premiums to cover petitioner's employees, based upon his pay roll, to be deducted by A. A. Davis & Company from the earnings of petitioner under his contract. This arrangement about compensation insurance seems to have been made for the convenience of both contracting parties. By that means A. A. Davis & Company knew that the employees of Brooks had protection; and likewise discharged its obligation under section 7285, Comp. Stat. 1921, as amended by chapter 61, Sess. L. 1923, as appears on pages 121-122 of such Session Laws, which makes it the duty of the original contractor to see that the employees of a subcontractor are protected. Under the act, as amended, the principal contractor becomes liable to employees of the subcontractor if he fails to

require his subcontractor to furnish compensation insurance, and this necessarily would include cases where, at the solicitation of the original contractor, no compensation is furnished by the subcontractor. This arrangement saved Brooks the trouble of buying a separate insurance contract.

A short time after petitioner had started performance of his subcontract, he associated with himself Robert W. Rogers, as a partner. A. A. Davis & Company knew of this arrangement, and acquiesced in it. Rogers was not active so far as actual labor on the construction work was concerned, while petitioner. E. H. Brooks, did actual manual labor on the construction along with other employees of the subcontractors. Brooks and Rogers, with the understanding that he, Brooks, should receive as wages, out of the gross earnings of Brooks and Rogers, the sum of $3.20 per day. For a considerable time the construction work proceeded under the subcontract of Brooks and Rogers, and reports of their pay roll were made to A. A. Davis & Company for the purpose of adjusting the insurance premiums. On the pay roll as reported, E. H. Brooks was being carried at the stipulated wage of $3.20 per day. These pay rolls were reported to the insurance carrier, and insurance premiums based upon such pay rolls paid to the insurance carrier by A. A. Davis & Company, and charged back to and deducted from the earnings of Brooks and Rogers under their subcontract.

On the 16th day of November, 1924, petitioner, while engaged in labor in road construction under the arrangement above detailed, was injured by the explosion of dynamite caps being used in blasting stumps to clear the right of way, the explosion injuring both of petitioner's eyes, resulting in total, permanent blindness, and otherwise injuring him. It seems that an "Employer's First Notice of Injury" was issued on the 20th day of November, 1924, by A. A. Davis & Company, reporting itself as "employer" and "Earl Hustus Brooks," appearing here as E. H. Brooks, as "Foreman—Road Construction," and reporting that his eyes had been destroyed by an explosion of dynamite caps, and that medical attention had been furnished within an hour after the accident. The attending physician made his report on November 21, 1924, that E. H. Brooks had been treated,—"both eyes removed." In due course petitioner presented his claim for compensation to the State Industrial Commission, by filing his claim and giving notice to A. A. Davis & Company, as employer, and to Federal Surety Company, as insurance carrier. A. A. Davis & Company and the Federal Surety Company contested the claim on the grounds that the "injuries did not arise out of nor in the course of his employment." and that claimant "was an independent contractor and was not an employee."

In the trial before the State Industrial Commission evidence was offered from which the facts above stated were abstracted. At the close of the hearing the commission made one finding, as follows:

"That the claimant, E. H. Brooks, was an independent contractor on November 16, 1924."

The order of the Commission denied the compensation sought, and the proceeding was presented here in apt time, by an original petition.

It is contended here by the petitioner that the State Industrial Commission was in error in its finding of fact above stated, urging that there is no evidence supporting such a finding. It is also contended that E. H. Brooks was under the protection of the insurance contract, since he was, in fact, doing work for Brooks and Rogers, subcontractors, under the subcontract, for a stipulated daily wage which was being reported week by week to A. A. Davis & Company, and insurance premiums being paid thereon to the insurance carrier and charged back against the earnings of Brooks and Rogers under the subcontract.

With questions of fact determined by the State Industrial Commission the court here has nothing to do. if there is testimony to support the determination. The Workmen's Compensation Act makes the findings of fact conclusive, if supported by testimony. It, however, is the duty of the court here to determine, as a matter of law, whether there is any testimony to support a finding of fact made by the State Industrial Commission when the finding of fact is assailed.

The State Industrial Commission found, as a fact, that E. H. Brooks was an independent contractor, and concluded as a matter of law that under any circumstances this precluded him from any compensation for his injury. and made no further findings of fact or conclusions of law.

The testimony shows that E. H. Brooks, as an individual and alone, took a subcontract under A. A. Davis & Company, to do certain construction work to be paid for upon an estimate to be made by the engineer. If this situation had continued, no doubt he would have had the status of an

independent contractor. But, soon after such subcontract was entered into, Brooks formed a partnership with Rogers, and after that arrangement, Brooks and Rogers were, as partners, performing under the subcontract. A A. Davis & Company knew about this partnership, and acquiesced in it. This was the situation when Brooks was injured. The evidence conclusively supports the conclusion that at the time of the injury Brooks and Rogers, as partners, were independent contractors. A finding that Brooks alone was an independent contractor, at the time of his injury, seems not to be supported by the record. Brooks the claimant, was a member of the partnership of Brooks and Rogers, independent contractors, at the time of the injury. If this is what was intended to be found by the State Industrial Commission, the finding of fact is supported. But, under the circumstances presented, does this fact, as a matter of law, preclude a recovery?

The record shows, without dispute, that at the time Brooks took the subcontract, A. A. Davis & Company, as a matter of convenience to both themselves and Brooks, agreed to carry compensation insurance to cover the employees of Brooks, the premiums to be paid by A. A. Davis & Company and charged back against any money due Brooks, and this understanding was carried out, and the surety company accepted the premiums. When the claimant and Rogers formed the partnership, the agreement concerning compensation insurance was continued as it was when Brooks was operating alone. Rogers himself was inactive, so far as actual physical effort in the hazardous construction work was concerned, but Brooks went to work on the job of construction, taking the same risk and hazard that other employees of Brooks and Rogers were taking, and at a daily stipend for such services, and week by week his name appeared on the pay roll reported to Davis & Company with his daily wage and aggregate for the week reported thereon. A. A. Davis & Company furnished the blanks for the pay roll reports, and they were made out and returned to them, and they, A. A. Davis & Company, paid the premiums and charged them back against the earnings of Brooks and Rogers. Thus, Davis & Company knew that Brooks was being carried on the pay roll on which they were paying insurance premiums, and the surety company knew about it when it collected the premiums, or could have known about it, had a right to know about it; and is, at the very least, presumed to have known it. Thus, for all

purposes, so far as the compensation insurance was concerned. Davis & Company accepted Brooks as one of its employees and reported his pay roll, including his own weekly earnings, to the insurance carrier as a basis for adjusting the insurance premiums, and the insurance carrier accepted the premiums upon the pay roll, also accepting him as an employee of Davis & Company for the purpose of the compensation insurance, as a risk under the policy. It is plain that Brooks thought he was protected by Davis & Company's insurance, and Davis & Company also thought so, reporting him as an employee within the protection, and the surety company accepted him as such up until it was called upon to respond under its contract. The arrangement about the compensation insurance seemed to be satisfactory to Brooks, Davis & Company and the Federal Surety Company in the matter of premiums upon Brooks and Rogers' pay roll, including the item of E. H. Brooks, so long as Brooks was at work, and the pay roll reported, but quite a different situation arose when Brooks received his injury and asked for compensation. Then, it appears that Davis & Company and the insurance carrier chose to repudiate the whole arrangement, and declare Brooks to be an independent contractor. These parties knew as well Brooks' situation when they were accepting his pay roll and charging him and his partner, Rogers, with the insurance premiums, as they did after he got hurt; and yet it was never pointed out to him that he was an independent contractor and not within the protection of the policy so far as we are able to tell from this record. Whether they owed him such a duty, we are not called upon to decide.

It seems that a fair and reasonable construction of the insurance contract, taken and considered in the light of the conduct of the parties in relation thereto, brings the injured claimant within the protection of such insurance contract. The conduct of the parties has been sufficiently detailed above. A. A. Davis & Company wanted Brooks to operate under their insurance which they had secured. A. A. Davis & Company knew that Brooks and Rogers were continuing the operations, as partners, under the arrangement for compensation insurance, and acquiesced in it. Brooks reported himself on the pay roll as an employee; and A. A. Davis & Company accepted the pay roll so furnished, reported the pay roll to the insurance carrier with the stipulated premium, which the insurance carrier accepted, and the premiums were charged back against

Brooks and Rogers. The insurance contract binds the insurance carrier, Federal Surety Company, as follows:

"To pay promptly to any person entitled thereto, under the Workmen's Compensation Law, and in the manner therein provided, the entire amount of any sum due, and all installments thereof, as they become due.

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such of certain statutes, as may be applicable thereof," etc.

Thus, the policy is made to protect A. A. Davis & Company against all obligations for compensation imposed upon them by applicable statutes. It also protects against obligations for compensation accepted by A. A. Davis & Company. A. A. Davis & Company accepted the obligation to compensate the employees of Brooks and Rogers in a proper case, including Brooks himself, when they accepted the pay roll, reported it to the insurance carrier, paid the premiums, and charged them back against Brooks and Rogers. The insurance carrier adopted this acceptance made by A. A. Davis & Company when it accepted the premiums based upon such pay roll, just as had been agreed in the insurance contract. Under the circumstances presented in this case, Brooks was in no different situation to that of any other employee of Brooks and Rogers. No one of them, including Brooks, was in a technical sense an employee of A. A. Davis & Company, but for the purpose of the compensation insurance, A. A. Davis & Company accepted them as such, and had discouraged the carrying of other and independent compensation insurance, and the insurance carrier had agreed to insure against such obligation to pay compensation as should be accepted by A. A. Davis & Company. In a sense, the facts established have the effect of an estoppel against A. A. Davis & Company and the insurance carrier to deny that Brooks fell within the protection of the insurance contract. But it is urged that estoppel cannot be applied, since by well-established rules estoppel must be pleaded and proven. In an ordinary civil action where an estoppel is relied upon the party so relying must plead it and support it by evidence; but the presentation of a claim for compensation to the State Industrial Commission is not an ordinary civil action requiring the same particularity of pleading as is required in actions in the law courts. This was pointed out in Scruggs Bros. & Bill Garage v. State Industrial Commission et al., 94 Okla. 187, 221 Pac. 470. And we deem it not necessary to go further into

such matter here. However, the view we take of the insurance contract, it is not necessary to base our conclusion upon any matter or theory of estoppel. We think that the conduct of A. A. Davis & Company clearly amounted to an acceptance of the obligation to compensate Brooks, and such acceptance bound the insurance carrier under the plain terms of the insurance contract; hence Brooks brought himself within the protection of such insurance contract.

The respondents, A. A. Davis & Company and Federal Surety Company, present the contention that if Brooks was a member of the partnership of Brooks and Rogers, he could not be an employee of Brooks and Rogers, and in presenting his claim for compensation is in the attitude of presenting a claim against himself. They point out that he could not maintain an action against the partnership for money. This, no doubt, is the common-law rule. But, it must be borne in mind that the whole theory of the Workmen's Compensation Law, and the law itself, is in derogation of common-law rules. The right of action vouchsafed the injured employees under the common law is abolished, and a theory of compensation has been worked out and enacted to take the place of the common-law action. The purpose of the Workmen's Compensation Law is to make the industry prosecuted, if hazardous, bear the burden of human wreckage incident to its operation. It is well known that almost every class of industry has in it some element of hazard and danger to the human agencies necessarily engaged in carrying on the industry, just as there is hazard and danger to the implements or machinery necessary to be used. Use tends to wear out and destroy the implements and machinery, and accidents happen despite any care that may be exercised, which will destroy or partially destroy such implements and machinery. Much of the work in the operation of any industry must be carried on by human agencies which become a part and parcel of the machinery and without which the industry could not be prosecuted. Accidents have always happened by which such human agencies have been injured, sometimes utterly wrecked and destroyed, just as inanimate parts of the general machinery may be injured, wrecked or destroyed. The injured part must be repaired, the part rendered useless must be laid out and another supplied. Always somebody has been compelled to bear the burden of such repairs and replacements. During all the industrial ages, expenses for repairs and replacements of inanimate parts of the general machinery have been passed

on to the ultimate consumer or the industry must cease to function. Before the advent of the Workmen's Compensation Law the workman himself carried the burden of his own injury and wreckage, or was thrown upon society as an object of charity, except in such cases as the workman was able to establish that his injury was the result of negligence of his superior. Of the many accidents to workmen a very small percentage could be compensated on any theory of negligence, and even then such compensation was indirectly passed on to the patrons of the industry. Many accidents happened from unforeseen causes, many without any determinable cause. They were just things that happened with apparently no body to blame, and yet a workman was maimed and scarred for life, power to earn a livelihood lessened or destroyed, either temporarily or permanently. A humanitarian idea developed in the minds of right thinking human beings. The expense of repairs and replacements of inanimate parts of the general machinery of industry was spread to the consumer, then why not spread the expense of repairs and replacements of the necessary human portion of the general machinery of industry as well? The idea developed into the Workmen's Compensation Law, and whether good or bad, it is written. Every common-law right of the workman has been abrogated, and another right substituted, not governed by common-law rules. To such workmen as could make recovery under common-law rules a burden falls, perhaps, but the scheme redounds to the general good of the great number of the animate units of the vast machinery of our industries. The written law says, in effect, to every unit of human machinery engaged in our industries. "You can no longer invoke the rules of the common law to compensate your injuries." Such a law becomes a farce and a failure if common-law rules may be invoked to thwart the spirit, purpose, and intention of it; and take away the new right created by it. The injured workman can no longer use common-law rules as weapons of offense to extract compensation for injuries sustained by him. It is not within the spirit, purpose, and intention of the law to deny common-law rights to the injured employee, and yet permit common-law rules to be invoked by his adversary to defeat the spirit of the law. The whole spirit of the law is to require every industry and its patrons to assist in a reasonable manner to salvage the wreckage of its animate units of the machinery that prosecutes the industry, and this spirit should prevail in matters arising before the State Industrial Commission in settling questions of compensation; and also when such questions are presented to this court for review.

The respondents say that if Brooks was a partner of Rogers, his injury could not be compensated because under the common-law rule he could not be employer and also employee, because under the common-law rule he could not prosecute an action against the partnership, of which he was one of the partners. This court seems to have held differently. In Ohio Drilling Co. v. State Industrial Commission, 86 Okla. 139, 207 Pac. 314, this court had under consideration the same question. The Ohio Drilling Company was a copartnership composed of four individuals, and was carrying on a character of operations hazardous under the law, and had bought compensation insurance from the Aetna Life Insurance Company. Each of the individuals composing the partnership was working for the copartnership at a stipulated daily wage of $14. The company had no other employees. One of the partners, C. D. Hupp. while working for the company in a hazardous employment, was injured. The court held in that case that the fact that he was one of the partners would not defeat his right to compensation. Indeed, why should it? The insurance company had sold the drilling company compensation insurance, and must have known who composed the drilling company, and that the names of these partners were being reported as employees, and accepted premiums on the basis of their daily earnings, thereby accepting them as risks under the policy. The Ohio Drilling Company Case could not with any good reason turn upon the fact that there were no other employees. That was a mere incident.

In Knox & Shouse v. Knox et al., 120 Okla. 45, 250 Pac. 783. this court had under consideration the same question, and followed the rule laid down in the Ohio Drilling Company Case, supra. Earl Knox and Frank Shouse were partners doing business as Knox & Shouse. They were engaged in a character of industry hazardous under the Workmen's Compensation Law, and were carrying compensation insurance to protect their employees. Earl Knox himself engaged in hazardous work as an employee along with the others of their employees, and at a stipulated daily wage, and was injured. This court held that although he was one of the partners, he was entitled to compensation for his injuries.

If Brooks and Rogers, as partners, had

been carrying compensation insurance, Brooks' claim would fall squarely within the facts of the Ohio Drilling Company and the Knox & Shouse Cases, supra. The insurance carrier would have known that E. H. Brooks and Robert W. Rogers were the individual partners. It would have been known from the weekly pay roll reported that Brooks was being carried as an employee at $3.20 per day and the premiums being paid for the insurance.

It would seem that the insurance carrier could not be concerned about the anomalous situation the partnership and one of the partners put themselves in, so long as the individual partner was being carried as an employee and reported on the pay roll, weekly wages reported, premiums paid thereon, and such reported employee engaged in hazardous work in the course of his employment at the time the injury was received.

We are not unmindful that some other state courts have held to a seemingly contrary doctrine to that of the Ohio Drilling Company and the Knox-Shouse Cases, supra; but notwithstanding such seeming contrariety, we think the rule laid down in the Ohio Drilling Company and Knox-Shouse Cases, supra, is sound.

There is a somewhat different question involved in the instant case to that involved in the cited cases. Brooks was employed by Brooks and Rogers, as was held in the Ohio Drilling Company and the Knox-Shouse Cases, and in addition to that, A. A. Davis & Company had, under the facts in this case, accepted the obligation to compensate him for such injuries as fell within the terms of the Workmen's Compensation Law, and such acceptance of the obligation bound the insurance carrier, for the reason that in its contract it had agreed to be bound by such acceptance by A. A. Davis & Company.

Under the uncontradicted and undisputed facts in this case, Brooks brought himself within the protection of the insurance policy being carried by A. A. Davis & Company, and for two reasons: (1) He showed that he was an employee of Brooks and Rogers, the subcontractors, so that he comes within the rule laid down by this court in the two cited cases; and (2) the record clearly shows that A. A. Davis & Company had accepted the obligation to compensate him for injuries in a proper case. Either of these reasons is sufficient to bring him within the protection and require that A. A. Davis & Company and the insurance carrier compensate him for such injuries as fall within the intendment of the Workmen's Compensation Law.

The finding made by the State Industrial Commission, "that the claimant, E. H. Brooks, was an independent contractor on November 16, 1924," cannot be permitted to stand because it is not supported by any evidence and is contrary to all the evidence. The conclusion of law reached by the State Industrial Commission that Brooks does not fall within the insurance protection is wrong, first, because contrary to the adjudications of this court in the Ohio Drilling Company and Knox-Shouse Cases, supra, and, second, because A. A. Davis & Company had accepted the obligation to compensate his injuries, regardless of his relationship to the subcontract of Brooks or of Brooks and Rogers.

The order and judgment of the State Industrial Commission denying compensation to the claimant, E. H. Brooks, is disapproved and reversed, and the cause remanded to the State Industrial Commission, with directions to vacate its finding of fact and conclusion of law.

The State Industrial Commission is further directed to make a finding of fact, first, that E. H. Brooks was an employee of Brooks and Rogers, subcontractors under A. A. Davis & Company; and, second, that A. A. Davis & Company had accepted the obligation to compensate E. H. Brooks for injuries sustained by him in the course of and growing out of his employment; and, third, that the injuries sustained by Brooks by reason of the explosion of the dynamite were received in the course of his employment and while engaged in hazardous work on the road construction; and thereafter to proceed in a manner not inconsistent with this opinion to determine the nature and extent of his injuries and the amount of compensation to which he may be entitled and any relief to which he may be entitled under the Workmen's Compensation Law, as an injured employee.

By the Court: It is so ordered.